UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOHN FALZON, CINDY FALZON, JOSEPH  :
VOELPEL, and DIANNA VOELPEL,  :
              Plaintiffs,  :
  :
v.  :    **<u>OPINION AND ORDER</u>**
  :
  :    19 CV 6096 (VB)
BRIAN FORD, STEPHANIE FORD,  :
SUNSTARTER SOLAR XXXIV LLC, and  :
SOLAR PROVIDER GROUP LLC,  :
              Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiffs John Falzon, Cindy Falzon, Joseph Voelpel, and Dianna Voelpel bring this action against defendants Brian Ford, Stephanie Ford, SunStarter Solar XXXIV LLC ("SunStarter Solar"), and Solar Provider Group LLC ("Solar Provider," and together with SunStarter Solar, the "Solar Defendants"), alleging a violation of 42 U.S.C. § 1983 and state law claims in connection with the Fords' lease of land to the Solar Defendants to develop a solar panel farm on the Fords' property.

    Now pending are defendants' motions to dismiss the amended complaint for failure to state a claim and for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (6). (Docs. ##24, 30).

    For the following reasons, the motions are GRANTED.

## BACKGROUND

    For the purpose of ruling on the motions to dismiss, the Court accepts as true all well-pleaded allegations in the amended complaint and draws all reasonable inferences in plaintiffs' favor, as summarized below.

1

Plaintiffs, the Falzons and the Voelpels, are next-door neighbors in the small town of Minisink, New York.  The Fords own eighty-five acres of land directly behind the Falzon and Voelpel properties.

Plaintiffs allege Brian Ford, a Minisink town councilman, had helped to enact laws regulating solar energy systems and equipment in Minisink.  Plaintiffs further allege that on March 3, 2017, the Fords entered into a long-term lease agreement with SunStarter Solar, a wholly owned subsidiary of Solar Provider.  The lease provided that for a term of 300 months (twenty-five years), SunStarter Solar would pay the Fords an annual rent of $1,900 per acre, for seven acres leased, and would also pay the property taxes on the seven acres leased.

Plaintiffs opposed the "planned solar panel farm" on the Fords' property due to the proximity of the anticipated project to plaintiffs' homes.  (Doc. #23 ("Am. Compl.") ¶¶ 63–64).  Plaintiffs allege they complained about the solar panel project to the Minisink Planning Board in 2018 and requested that the project be developed elsewhere on the Fords' property.

Plaintiffs allege their opposition to the solar panel project "brought hostile backlash because Brian Ford used his position as an elected Town official to retaliate against Plaintiffs." (Am. Compl. ¶ 69).  Plaintiffs claim Brian Ford "used his position and influence as a Town Board member to induce a number of individuals to yell at and to curse at John Falzon at board meetings and to display outright hostility toward the Falzons and the Voelpels because of their opposition."  (Id. ¶ 70).  Plaintiffs argue Brian Ford's actions were "the actions of an elected town official cloaked with the influence of his office—who intentionally retaliated against Plaintiffs."  (Id. ¶ 72).

Plaintiffs also allege that in "late October 2018, Brian Ford (or someone at his direction) parked a large manure spreader and a dump wagon directly behind the Falzons' house—only five

2

feet from the property line." (Am. Compl. ¶ 73). Plaintiffs allegedly complained to Minisink officials, including the Minisink Planning Board, about Brian Ford's conduct and the town's subsequent failure to act. Plaintiffs allege the manure spreader and dump wagon were finally removed after a local TV station reported on the incident in January 2019. According to plaintiffs, Stephanie Ford told Cindy Falzon that Brian Ford had intentionally parked the manure spreader and dump wagon near the Falzons' property line in retaliation for plaintiffs' opposition to the planned solar panel project.

Plaintiffs further allege SunStarter Solar's commissioned visual impact study misled the Minisink Planning Board. According to plaintiffs, SunStarter Solar submitted images collected with a 24-millimeter wide-angle lens but omitted from the study images collected with a 50-millimeter lens, which were meant to approximate the human eye. Plaintiffs allege the change in methodology had no reasonable basis.

## DISCUSSION

I.   Legal Standards

   A.   Rule 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009).[1] A cause of action "is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011). The party invoking the Court's jurisdiction bears the burden to establish that jurisdiction exists. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

3

When deciding whether subject matter jurisdiction exists at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992).

B.     Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

4

II.     Application

Defendants argue plaintiffs have failed adequately to plead their Section 1983 claim arising under federal law, and therefore, that claim should be dismissed. Because of this, defendants further contend the Court should dismiss plaintiffs' remaining state law claims for lack of subject matter jurisdiction.

The Second Circuit has "ruled that the sufficiency of a color-of-law allegation is to be tested under Rule 12(b)(6)." Monsky v. Moraghan, 127 F.3d 243, 245 (2d Cir. 1997). Accordingly, the Court first addresses defendants' Rule 12(b)(6) arguments respecting plaintiffs' Section 1983 claim.

A.      Section 1983 Claim Against Brian Ford

Defendants argue the amended complaint fails to state a Section 1983 First Amendment retaliation claim against defendant Brian Ford.

The Court agrees.

1.      Acting Under Color of State Law

To state a claim under Section 1983, a plaintiff must first plausibly allege the defendant acted under color of state law. Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008).

To act under color of state law or authority for purposes of Section 1983, the defendant must "exercise[] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Moreover, "[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." Id. at 49–50. However, it is "axiomatic that under color of

5

law means pretense of law and that acts of officers in the ambit of their personal pursuits are plainly excluded." Pitchell v. Callan, 13 F.3d 545, 547–48 (2d Cir. 1994). Thus, whether the specific conduct a plaintiff complains of constitutes state action is "necessarily [a] fact-bound inquiry." Cranley v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105, 111–12 (2d Cir. 2003).

Here, the amended complaint does not allege the typical actions of a town board member that would fall plainly within the ambit of actions taken under color of state law. Had Brian Ford acted under color of state law, his actions would have been in the course of legislating or governing. But here there are no such allegations. Moreover, the amended complaint lacks any plausible allegation that Brian Ford possessed influence over his fellow town board members or other individuals. Although plaintiffs allege Brian Ford got other individuals to heckle plaintiffs, they do not specify who those individuals were, or how Brian Ford was able to induce such conduct. Instead, plaintiffs plead conclusory allegations that Brian Ford was able to do so on account of his office. (See Am. Compl. ¶¶ 69, 70, 72).

Furthermore, Brian Ford's alleged actions bear no relationship to his office or authority. Plaintiffs do not plausibly suggest Brian Ford acted under color of law when he parked a manure spreader and dump wagon near the Falzons' property. Furthermore, plaintiffs' allegations that the town failed to order the removal of the manure spreader and dump wagon because of Ford's town board position are entirely conclusory and speculative, at best.

Plaintiffs cite in their opposition a number of court decisions for the proposition that the phrase "under color of" state law in Section 1983 should be construed broadly to encompass Brian Ford's alleged conduct. The Court is not persuaded. For example, in United States v. Giordano, 442 F.3d 30, 47 (2d Cir. 2006), the Second Circuit held, in the context of 18 U.S.C. § 242, that the defendant had acted under color of law, because he "used the [victims'] fear of the

power he wielded as mayor to keep them from reporting the ongoing abuse, and that the victims had a right under the Fourteenth Amendment to be free from sexual abuse by a state actor." Here, there are no plausible allegations concerning Brian Ford's power over plaintiffs.

Similarly, in Monsky v. Moraghan, 127 F.3d at 244, the Second Circuit held a Section 1983 claim should not be dismissed for failure to plead action under color of law when the complaint alleged a state court judge allowed his dog to approach and "aggressively nuzzle" a litigant who was researching records in the court clerk's office.  Although the Second Circuit acknowledged the defendant's alleged conduct fell outside "the typical actions of a state judicial officer that would plainly fall within the ambit of actions taken under color of law" such as "presiding at trial or rendering judgments," the complaint adequately alleged action under color of law because it charged the judge "was known to, and deferred to by, personnel of the office" and "was allowed to enter the office with his dog and remain there . . . because he was a judge."  Id. at 245–46.  Here, there are no allegations about the deference due Brian Ford.

And in United States v. Tarpley, 945 F.2d 806 (5th Cir. 1991), the Fifth Circuit held that a police officer had acted under color of law when he lured his wife's lover to the officer's home, beat him, and threatened to kill him if he reported the incident, telling his victim that because he was a police officer, he could.  The Fifth Circuit found the color of law requirement satisfied for 18 U.S.C. §§ 241 and 242 because "the air of official authority pervaded the entire incident."  945 F.2d at 809.  Yet here, there are no allegations about Brian Ford's cited authority for his allegedly retaliatory conduct.

Accordingly, there are no allegations in the amended complaint about how Brian Ford's conduct is tied to his position as a town board member.  Even still, the Court recognizes the under color of law inquiry is fact-specific, and thus the Court addresses the substance of

plaintiffs' First Amendment claim.  See Cranley v. Nat'l Life Ins. Co. of Vt., 318 F.3d at 111–12.

    2.  First Amendment Retaliation Claim

As noted above, "[i]t is not enough . . . for a plaintiff to plead state involvement in 'some activity of the institution alleged to have inflicted injury upon a plaintiff'; rather, the plaintiff must allege that the state was involved 'with the activity that caused the injury' giving rise to the action."  Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d at 257–58 (quoting Schlein v. Milford Hosp., Inc., 561 F.2d 427, 428 (2d Cir. 1977)).  Here, plaintiffs allege Brian Ford engaged in unlawful First Amendment retaliation.

To state a First Amendment retaliation claim under Section 1983, a plaintiff must plausibly allege:  (i) he engaged in constitutionally protected speech or conduct; (ii) a defendant took adverse action against him; and (iii) the protected activity and adverse action are causally connected.  Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015).

With respect to the first element, petitioning the government for a redress of grievances is protected activity.  Indeed, the right to complain to public officials and to seek administrative and judicial relief is protected by the First Amendment.  Franco v. Kelly, 854 F.2d 584, 588–89 (2d Cir. 1988).  With respect to the second element, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."  Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003).  "Otherwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection."  Id.  In making this determination, the inquiry must be "tailored to the different circumstances in which retaliation claims arise."  Id.  Finally, with respect to the third element, a plaintiff must allege a causal connection between the protected

activity and the adverse action. Dolan v. Connolly, 794 F.3d at 294. To sufficiently allege a causal connection, the plaintiff's "allegations must support an inference that the protected conduct was a substantial and motivating factor for the adverse action[ ]." Dorsey v. Fisher, 468 F. App'x 25, 27 (2d Cir. 2012) (summary order).

Here, plaintiffs allege they engaged in protected conduct—voicing to the Minisink Planning Board their opposition to the Fords' proposed solar farm. Although the Second Circuit has not resolved whether a petition for rezoning or an application for a permit is protected by the First Amendment, voicing a complaint or opposition is. See Ridgeview Partners, LLC v. Entwhistle, 227 F. App'x 80, 82 (2d Cir. 2007) (summary order).

Although plaintiffs allege Brian Ford took adverse action against them—by heckling plaintiffs and inciting others to do the same, and by parking a manure truck near the Falzons' property—the amended complaint does not, nor can it, plausibly suggest Brian Ford's allegedly retaliatory conduct chilled their speech by deterring them or "similarly situated individual[s] of ordinary firmness from exercising" their constitutional rights. Davis v. Goord, 320 F.3d at 353. Instead, plaintiffs offer mere conclusory statements that their speech was chilled, and such statements are insufficient.

Moreover, the amended complaint is replete with examples suggesting Brian Ford's allegedly retaliatory conduct did little to curb plaintiffs' opposition to the solar project. Plaintiffs allege they complained repeatedly about the solar panel project to the Minisink Planning Board, complained to town officials respecting the manure spreader and dump wagon, and even complained to the Minisink Planning Board, as late as January 2019, about Brian Ford's allegedly retaliatory conduct. (See Am. Compl. ¶¶ 69, 79). And now, plaintiffs bring suit in

9

federal court to enjoin the solar panel project and Brian Ford's conduct. Thus, the Court finds plaintiffs do not plausibly allege a First Amendment retaliation claim.

Accordingly, plaintiffs' Section 1983 claim against Brian Ford must be dismissed.

B.      State Law Claims

The Solar Defendants argue that, because plaintiffs cannot maintain a federal claim, the Court, pursuant to 28 U.S.C. § 1367, lacks supplemental jurisdiction over plaintiffs' state law claims.

The Court agrees.

As discussed above, plaintiffs have failed to state a First Amendment retaliation claim against Brian Ford. Furthermore, it is not apparent that plaintiffs' Section 1983 and state law claims—a violation of the New York State Constitution, intentional and negligent infliction of emotional distress, private nuisance, aiding and abetting private nuisance, intentional misrepresentation, and negligence—arise from a common nucleus of operative fact, as required for the exercise of supplemental jurisdiction. For these reasons, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims. See 28 U.S.C. 1367(c)(3).[2]

III.    Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires." However, leave to amend may "properly be denied for . . . 'futility of amendment.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).

---

[2] To be clear, by declining to exercise supplemental jurisdiction, the Court expresses no opinion as to the merits of the state law claims.

The amended complaint contains no allegations suggesting plaintiffs have an actionable federal claim against any defendant that plaintiffs "inadequately or inartfully pleaded" and "should therefore be given a chance to reframe." See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). The problem with plaintiffs' federal claim is substantive, and better pleading will not cure the defect. Moreover, plaintiffs, who are represented by counsel, have already had an opportunity to amend their pleading, and did so, following receipt of the Solar Defendants' original motion to dismiss, which was substantively similar to the Solar Defendants' motion to dismiss the amended complaint. Nevertheless, the problems with plaintiffs' pleading persist. For these reasons, further amendment would be futile.

## CONCLUSION

The motions to dismiss are GRANTED.

The Clerk is instructed to terminate the motions (Docs. ##24, 30) and close this case.

Dated: May 6, 2020.
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge